Belknap
No. 97-306

THE STATE OF NEW HAMPSHIRE

v.

BOUNLEUTH "PHENG" SINBANDITH

May 25, 1999

*Philip T. McLaughlin*, attorney general (*Brian R. Graf*, assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Bounleuth "Pheng" Sinbandith, was convicted after a jury trial in Superior Court (*O'Neill*, J.) on seven indictments relating to the sale of a controlled drug. *See* RSA 318-B:2 (1995). We affirm.

In July 1996, Corporal Nightingale, an undercover narcotics detective for the State Police, conducted an investigation in Laconia. In the course of that investigation, Nightingale made arrangements with the defendant for several purchases of crack cocaine. On four occasions, Nightingale gave the defendant a sum of money, and the defendant drove to a separate location. On all but one of these occasions either Elizabeth Begin, the defendant's girlfriend, or Velvet Weeks, another associate of the defendant, accompanied the defendant to the other location. Upon the defendant's return, Weeks would hand Nightingale or another undercover officer a quantity of crack cocaine. On one of the four occasions, however, the defendant, apparently unable to acquire the cocaine, returned the money to Nightingale.

A grand jury returned seven indictments against the defendant. Three of the indictments (sale indictments) alleged that the defendant "DID, IN CONCERT WITH AND AIDED BY ANOTHER, KNOWINGLY SELL OR DISPENSE A QUANTITY OF THE CONTROLLED DRUG, CRACK COCAINE." Each of these indict-

ments contained a caption at the top corner of the page that read "ACCOMPLICE TO SALE OF A CONTROLLED DRUG," and cited both the statute encompassing accomplice liability, RSA 626:8 (1996), and RSA 318-B:2. Three indictments charged the defendant with conspiracy to sell a controlled drug. *See* RSA 629:3 (1996); RSA 318-B:2. These indictments each alleged that the defendant agreed with "VELVET WEEKS AND/OR ELIZABETH BEGIN" to sell crack cocaine. They also alleged as overt acts that: (1) either Weeks, Begin, or the defendant negotiated with Nightingale; (2) the defendant received money from Nightingale; and (3) Weeks dispensed the cocaine to Nightingale. A final indictment charged the defendant with attempted sale of a controlled drug. *See* RSA 629:1 (1996); RSA 318-B:2. The attempt indictment alleged as a substantial step that the defendant had met with Nightingale, negotiated for the purchase of crack, received money as payment for the crack, and traveled to the separate location. The defendant was convicted on each charge, and this appeal followed.

On appeal, the defendant first challenges the sufficiency of the jury instructions. Although the court instructed the jury on the requirement that their verdict be unanimous, the court did not specifically instruct that they must find unanimously which individual in the conspiracy indictments the defendant had agreed with, and which act alleged in those indictments constituted an overt act in furtherance of the conspiracy. The court also did not give a specific instruction that the jury must unanimously determine which act alleged in the attempt indictment constituted a substantial step. Because each of these indictments, according to the defendant, contained alternative factual predicates for finding elements of the charged offenses, he argues that the trial court's failure to give such instructions violated his right under Part I, Article 15 of the New Hampshire Constitution and RSA 625:10 (1996) to a unanimous jury verdict with respect to each element. *See State v. Greene*, 137 N.H. 126, 128, 623 A.2d 1342, 1345 (1993). The State counters that these arguments were not properly preserved.

In New Hampshire, "a defendant waives his right to a specific jury instruction unless the request is timely made." *State v. Davis*, 139 N.H. 185, 192, 650 A.2d 1386, 1390 (1994) (quotation omitted). Moreover, a specific objection is required to preserve a challenge to jury instructions as given. *See id.* at 192-93, 650 A.2d at 1390. "This requirement affords the trial court an opportunity to correct an error it may have made and is particularly appropriate where an alleged error involves a jury instruction." *State v. Seymour*, 142 N.H. 620, 624, 707 A.2d 130, 133 (1998) (quotation omitted). We will

not consider grounds for objections that the defendant did not specify at trial. *See State v. Winn*, 141 N H. 812, 813, 694 A.2d 537, 538 (1997).

With respect to the attempt indictment, the defendant concedes that he never objected to the adequacy of the instruction. Rather, relying on *State v. Hewitt*, 128 N.H. 557, 517 A.2d 820 (1986), he argues that the right to a unanimous jury verdict is a fundamental trial right, and that he thus had no obligation to alert the trial court to its potential error.

■ The defendant's reliance on *Hewitt* is misplaced. In *Hewitt*, we held that a criminal defendant could waive the constitutional right to a twelve-person jury only by an express and personal waiver. *See Hewitt*, 128 N.H. at 561, 517 A.2d at 823. We observed, however, that "a trial court's duty to require an express and personal waiver from a defendant necessarily presupposes that the court is in a position to know that the defendant is faced with a choice of whether to invoke a constitutional right." *Id.* at 560, 517 A.2d at 822. The right to jury unanimity as to each element of a criminal offense may ordinarily be satisfied through a general unanimity instruction, *see Greene*, 137 N.H. at 130, 623 A.2d at 1345, which the trial court gave in this case. Thus, even assuming that the general instruction was insufficient, we cannot hold that the trial court was in a position to know that the defendant might be waiving that right. "[W]hen a defendant's affirmative challenge is necessary to apprise a court that a constitutionally protected interest is at stake, it is reasonable to construe a defendant's silence as a waiver of the challenge." *Hewitt*, 128 N.H. at 560, 517 A.2d at 822. Because the defendant failed to object to the adequacy of the jury instructions with respect to the attempt indictment, we decline to address the merits of that argument. *See Davis*, 139 N.H. at 192-93, 650 A.2d at 1390.

As to the conspiracy indictments, the defendant did ask whether the trial court

> would . . . be inclined to entertair that the jury make specific findings as to exactly which two people they – or how many people they decided were in the conspiracy and which of the acts committed they found to be the act in furtherance of a conspiracy?

We construe this request as an objection to the adequacy of the conspiracy instructions. An examination of the context in which the defendant made this request, however, reveals that the defendant never raised the argument he now makes on appeal.

Prior to instructing the jury, the trial court discussed with counsel its proposed jury instructions. The defendant's counsel expressed concern that the instructions might lead the jury to find that an overt act had been committed by a nonconspirator because the conspiracy indictments contained alternative allegations both as to the person with whom the defendant had agreed, and as to the overt act committed in furtherance of the conspiracy. The court reviewed the instruction and stated that the court believed it to satisfy that concern. The defendant's counsel responded, "All right." On the following day, the court asked counsel whether they had any additional issues with the instructions. At this point the defendant's counsel made the request at issue. After the State objected, the court asked whether the defendant had anything further with regard to the request. The defendant's counsel responded:

> I'll just reiterate my concern that [the jury] find that the overt act was committed by one of the conspirators as opposed to one of the nonconspirators. That's my concern.

The court again reviewed the instruction, stated the court's belief that it satisfied the defendant's concern, and stated that they had previously discussed the matter. Defendant's counsel responded, "Yes, we did."

■ Thus, the only rationale that the defendant offered for his request was his concern that the jury might find that a nonconspirator committed the overt act in furtherance of the conspiracy. He never raised the ground he now argues — that his right to jury unanimity as guaranteed by the New Hampshire Constitution and RSA 625:10 would be infringed without specific unanimity instructions as to the alternative factual predicates alleged in the conspiracy indictments. Accordingly, we hold that the defendant failed to preserve this argument. *See Winn*, 141 N.H. at 813, 694 A.2d at 538.

The defendant next argues that the trial court should have dismissed the sale indictments for failure to allege the proper *mens rea*. At the close of the State's case, the defendant moved to dismiss the accomplice indictments, arguing that they were defective because they alleged that he had acted "knowingly" when accomplice liability requires the *mens rea* of "purposely." *See* RSA 626:8, III(a). The State countered that the "in concert with and aided by another" language of the indictments charged the defendant either as a principal or as an accomplice, and that "knowingly" was the proper *mens rea* to charge the defendant as a principal. Conceding that he

had notice that he was being charged as either a principal or an accomplice, the defendant asserted that the State nevertheless was required to allege that he had acted purposely. The trial court denied the motion.

■ An indictment is constitutionally sufficient if it provides enough information to apprise the defendant of the charges with adequate specificity to prepare a defense and to be protected against double jeopardy. *See State v. Pittera*, 139 N.H. 257, 259, 651 A.2d 931, 933 (1994). To this end, the indictment must contain the elements of the offense and enough facts to notify the defendant of the specific charges. *See State v. Barton*, 142 N.H. 391, 394, 702 A.2d 336, 339 (1997).

An indictment that alleges principal liability without reference to accomplice liability sufficiently charges the defendant as an accomplice. *See id.* at 395, 702 A.2d at 339. Neither the defendant nor the State contests that an indictment charging the defendant solely as an accomplice must allege the appropriate elements of RSA 626:8, III, including the proper *mens rea. See State v. Horne*, 125 N.H. 254, 256, 480 A.2d 121, 122 (1984). The defendant does not argue on appeal that "purposely" is the proper *mens rea* under RSA 318-B:2. Rather, acknowledging that the jury could have convicted him as an accomplice had the State charged him as a principal, he argues that the State chose to charge him as an accomplice, and as such was required to allege purposeful conduct.

■ We have consistently stated, however, that language in an indictment alleging that a defendant acted "in concert with" another is sufficient to charge the defendant *both* as a principal and as an accomplice. *See, e.g., State v. Thornton*, 140 N.H. 532, 537, 669 A.2d 791, 795 (1995). Thus, the indictments in this case provided sufficient notice to the defendant that he was being charged as a principal. Indeed, the defendant conceded that he had such notice. That they were captioned as accomplice charges does not alter the explicit language of the indictments that put the defendant on notice that he could be convicted as either a principal or an accomplice. *Cf. Commonwealth v. McClaine*, 326 N.E.2d 894, 895 (Mass. 1975) (substance of a charge is determined by the language in the body of the charge). Having sufficiently charged the defendant as a principal, the indictments provided the defendant adequate notice to prepare a defense to principal or accomplice liability. *See Barton*, 142 N.H. at 395, 702 A.2d at 339; *cf. State v. Thresher*, 122 N.H. 63, 69, 442 A.2d 578, 580-81 (1982) (indictment alleging that defendant "in concert with and aided by" another acted "knowingly" suffi-

ciently alleged accomplice or principal liability). Therefore, we affirm the trial court's denial of the motion to dismiss.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.